IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 26-cv-01536-CYC

OBINNA VINCENT UZOH,

Petitioner,

v.

JUAN BALTASAR, in his Official Capacity as Warden at GEO Group Ice Processing Center;
GEORGE VALDEZ, in his Official Capacity as Director of the Denver Field Office for U.S. Immigration and Customs Enforcement;
DAVID VENTURELLA,[1] in his Official Capacity as Acting Director of U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his Official Capacity as Secretary, U.S. Department of Homeland Security; and
TODD BLANCHE, in his Official Capacity as Attorney General of the United States,

Respondents.

---

**ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Petitioner Obinna Vincent Uzoh, a detainee at the GEO Group's ICE Processing Center, an immigration detention facility in Aurora, Colorado, petitions for a writ of habeas corpus, contending that the respondents, who control that facility, are detaining him unlawfully. ECF No. 1 (the "Petition"). Because the bond hearing he received allocated the burdens of proof contrary to the requirements of due process, the petition is **GRANTED** in part. The petitioner shall receive a bond hearing within seven days where the government shall bear the burden of justifying his continued detention.

[1] David Venturella, who has become the Acting Director of U.S. Immigration and Customs Enforcement, is automatically substituted for Todd Lyons, the individual formerly in this position as a defendant in this case. *See* Fed. R. Civ. P. 25(d).

**BACKGROUND**

The petitioner, a Nigerian citizen admitted to the United States on a student visa in 2009, overstayed his visa and, in 2012, was convicted of obstruction of justice. ECF No. 1 ¶¶ 21, 22. That same year, the Department of Homeland Security ("DHS") placed him in removal proceedings and briefly detained him before an Immigration Judge ("IJ") released him on a $10,000 bond. *Id.* ¶¶ 23–25. Shortly after his release, the IJ granted the petitioner's motion to terminate his proceedings, which DHS did not oppose. *Id.* ¶ 27. Until recently, the petitioner lived at liberty in the United States apparently without further issue. *Id.* ¶ 28. He is married to a U.S. citizen, has two young U.S.-citizen children, including a severely disabled and ill three-year-old for whom he is the sole surviving parent. *Id.* ¶ 27.

On October 23, 2025, U.S. Immigration and Customs Enforcement ("ICE") again encountered the petitioner, detaining him, and placing him in removal proceedings. *Id.* ¶ 28. He moved for a custody redetermination hearing before an IJ. *Id.* The IJ denied release in a check box form, writing only "did not establish not a danger to the community." *Id.* ¶¶ 30–31; ECF No. 1-15 at 2.

After the petitioner administratively appealed the bond denial, the IJ issued a three-page bond memorandum explaining that the petitioner bore the burden of proving that he is not a danger to the community. ECF No. 1-16. The IJ denied bond based primarily on allegations contained in an affidavit attached to a 2011 criminal complaint for a charge related to attempting to contact and solicit a minor for sexual activity, which ultimately resulted in the petitioner's plea to obstruction of justice. *See* ECF No. 1 ¶¶ 32–33; ECF No. 1-16. The IJ recognized that the alleged conduct was from 14 years ago, that the petitioner was not convicted of this offense, he had no additional criminal history, and had expressed that he "made a wrong judgment," successfully completed all terms of his sentence, and

"committed himself to rehabilitation and personal growth." ECF No. 1-16 at 2. Nonetheless, he concluded that "the record is insufficient to establish that he would not pose a danger to persons or property if he were released." *Id.* The Board of Immigration Appeals ("BIA") denied the petitioner's appeal of the IJ's bond determination. ECF No. 1 ¶ 37.

The IJ also denied the petitioner's adjustment of status application and ordered his removal. *Id.* ¶ 36. The petitioner's appeal of that order is now pending before the BIA. *Id.*

## ANALYSIS

The petitioner argues that he is entitled to relief because: (1) DHS failed to provide him an adequate opportunity to advocate for his release before an immigration officer, violating 8 C.F.R. § 236.1(c)(8) (Count One); (2) the IJ improperly allocated the burden of proof to him at his bond hearing, violating the Immigration and Nationality Act ("INA") (Count Two); (3) the petitioner's detention and burden of proof at the bond hearing violated the Administrative Procedure Act ("APA") (Count Three); (4) the petitioner's re-detention violated substantive due process under the Fifth Amendment (Count Four), and; (5) the petitioner's detention without a pre-deprivation hearing and burden of proof at the bond hearing violated procedural due process under the Fifth Amendment (Count Five). The petitioner is correct that his bond hearing violated due process, and the Court thus does not reach his statutory claims on the same issue. The petitioner is incorrect as to his other claims.

### 1. No additional process under 8 C.F.R. § 236.1(c)(8) was required.

The petitioner's detention is governed by 8 U.S.C. § 1226(a), which allows the Attorney General to "continue to detain" an arrested noncitizen or "release the [noncitizen]" on a bond or conditional parole "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The implementing regulations state that an

immigration officer "authorized to issue a warrant of arrest may, in the officer's discretion, release" the noncitizen "provided that the [noncitizen] must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). The noncitizen may then request a bond hearing before an IJ. *Id.* § 236.1(d)(1); *see id.* § 1003.19 (detailing bond hearing procedures). Put simply, an immigration officer makes the initial custody determination for a noncitizen arrested under 8 U.S.C. § 1226(a) for removal proceedings, and an IJ conducts a custody redetermination upon request.

The petitioner claims, in essence, that he did not receive a *bona fide* initial custody determination. *See* ECF No. 1 ¶¶ 28–29, 77–81. He acknowledges that an officer denied him "discretionary release," *id.* ¶ 28, as reflected in the Form I-286 "Notice of Custody Determination," attached to his petition, ECF No. 1-9, but argues that this denial violated the regulation because he lacked a sufficient opportunity to demonstrate that he was neither a danger not a flight risk. ECF No. 1 ¶ 80. He does not explain what would have constituted an adequate "opportunity," but regardless, nothing in the regulation requires "some sort of adversarial hearing-like process . . . before DHS may exercise its discretion to detain a noncitizen under § 1226(a)." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 494 (S.D.N.Y. 2025). Nor does it demand that DHS "engage in painstaking review of every facet of a noncitizen's history and characteristics before doing so." *Id.* That is so because a noncitizen detained under this section has recourse to a bond hearing before an IJ.

To be sure, the regulation "still requires that such discretion actually be exercised—i.e., that some determination actually be made." *Tumba v. Francis*, 813 F. Supp. 3d 394, 404 (S.D.N.Y. 2025). And where the record reflects that DHS is not exercising that discretion at

all pursuant to a policy of mandatory detention, then it may violate due process. *See, e.g.*, *Yao v. Almodovar*, 813 F. Supp. 3d 461, 475 (S.D.N.Y. 2025); *Chipantiza-Sisalema v. Francis*, 25 Civ. 5528(AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025); *Tumba*, 813 F. Supp. 3d at 404–05. But that is not the case here, and it is not for the courts to fashion procedures for the proper exercise of this discretion out of whole cloth.

**2. The petitioner's re-detention did not violate substantive due process or the APA.**

The petitioner's next argument, that his re-arrest and re-detention some thirteen years after his release violate substantive due process, also fails. *See* ECF No. 1 ¶ 97–100.

"Substantive due process—in the civil detention context, including immigration detention—protects against detention that is arbitrary, punitive, or otherwise not reasonably related to a legitimate governmental purpose." *Cardoso v. Noem*, No. 2:25-cv-00968-WJ-JMR, 2026 WL 194626, at *6 (D.N.M. Jan. 26, 2026). The Supreme Court has held that, as a general matter, "detention during deportation removal proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). And "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

The petitioner nonetheless argues that his re-arrest and re-detention violate substantive due process because he does not present a risk of flight or danger to the community, the only legitimate rationales for civil immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But "[t]he Court cannot make that finding on this record. A bond hearing is the primary test of whether detention is excessive to the government's interest in detention." *Vargas-Sacul v. J. Johnson*, No. 5:26-cv-02494-ACCV, 2026 WL 2722526, at *4 (C.D. Cal. Sept. 15, 2026). As discussed below, the bond hearing that the

petitioner received was constitutionally deficient, but it does not follow that his re-arrest and re-detention were void *ab initio*. Section 1226(a) grants the government broad authority to "arrest[ ] and detain[ ]" noncitizens "pending a decision" on their removal. 8 U.S.C. § 1226(a). The petitioner's position would engraft an exception for noncitizens who have previously been encountered by ICE and released so long as they have not had any intervening criminal contact. Substantive due process does not supply this exception.

The petitioner's contention that his re-arrest and re-detention were "arbitrary and capricious," violating the APA, is similarly misplaced. ECF No. 1 ¶ 90. This argument is the substantive due process claim in different packaging, *see, e.g.*, *A.T. v. Baltazar*, 838 F. Supp. 3d 1135, 1144 (D. Colo. 2026), and fails for the same reason. Whether the petitioner presents a danger or flight risk must be adjudicated in a bond hearing with constitutional procedures.

**3. No pre-deprivation bond hearing was required.**

No statute or regulation requires DHS to provide noncitizens with bond hearings prior to arresting and detaining them for removal proceedings. Nonetheless, the petitioner contends that, as a matter of procedural due process, his length of residence in the community after his 2012 release gave rise to a liberty interest entitling him to a pre-deprivation bond hearing. ECF No. 1 ¶¶ 101–19; ECF No. 10 at 5–6. He cites a number of cases holding that noncitizens released pending removal proceedings must be afforded a hearing before that release can be revoked. *See* ECF No. 1 ¶¶ 113–115 (citing, e.g., *Pinchi v. Noem*, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); *Peña Becerra v. Sparks*, No. 2:26-cv-00212-JNP-DBP, 2026 WL 915439 (D. Utah Apr. 3, 2026); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025); *Orellana v. Noem*, 807 F. Supp. 3d 745 (W.D. Ky.

2025); *Ekenge v. Baltazar*, No. 26-cv-00630-SBP, 2026 WL 617341 (D. Colo. Mar. 5, 2026); *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069 (N.D. Cal. 2025)).

These authorities are distinguishable: in those cases, the government was the source of noncitizen's protected liberty interest. Relying on cases mandating due-process protections for individuals on some form of criminal supervised release, *see, e.g., Morrissey v. Brewer*, 408 U.S. 471 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), these courts found that "[e]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Ekenge*, 2026 WL 617341, at *3 (quoting *Pinchi*, 792 F. Supp. 3d at 1032); *Peña Becerra*, 2026 WL 915439, at *5–6. Discretionary release from custody "constitute[s] an 'implied promise'" that ICE will not revoke release unless the noncitizen "'fail[s] to live up to the conditions of [their] release.'" *Pinchi*, 792 F. Supp. 3d at 1034 (quoting *Morrissey*, 408 U.S. at 482)). In this context, these courts have required pre-deprivation bond hearings.

The petitioner did not receive this same implied promise. His removal proceedings were terminated without prejudice in 2012, ECF No. 1 ¶ 27, and at the time of his arrest in 2025, he was not on any form of conditional release. ICE's statutory authority to arrest and detain him pending a custody redetermination hearing before an IJ was therefore not subject to any additional due process constraints. Again, the petitioner seeks to create a constitutional exception for noncitizens who have previously been contacted and released by ICE—regardless of whether their removal proceedings are still active or their current liberty is by grant of the government. But the petitioner has not pointed to any cases requiring a pre-deprivation hearing on these facts, and the Court has not found one.

Accordingly, the petitioner's arrest and detention without a pre-deprivation hearing did not violate due process.

**4. The petitioner's bond hearing violated procedural due process.**

At his custody redetermination hearing, the IJ required the petitioner to establish that he is not a danger to the community or a flight risk. ECF Nos. 1-16. This allocation of the burden of proof did not comport with due process, entitling the petitioner to relief.

Under our Constitution, no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const., amend V. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Section 1226(a) is silent as to which party bears the burden of proof at the custody redetermination hearing, *see L.G. v. Choate*, 744 F. Supp. 3d 1172, 1179 (D. Colo. 2024), and the Tenth Circuit has not addressed this issue. Among other circuits, the law is sharply divided. *Compare Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021) (due process requires the government to bear the burden of proof at a bond hearing to maintain prolonged detention), *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) (same) *with Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) (the noncitizen bears the burden of proof to justify release), *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022) (same), *Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274 (3d Cir. 2018) (same).

This Court squarely confronted this question in *Kuzmic v. Baltazar*, No. 26-cv-00577-CYC, 2026 WL 1291853 (D. Colo. May 12, 2026), and, applying the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), concluded, like the overwhelming majority of courts in this district, that due process demands that the burden be placed on the government. *Kuzmic*, 2026 WL 1291853 at *2–5. Following the First Circuit, the Court further determined

that "the government bears the burden of proving dangerousness by clear and convincing evidence and of proving flight risk by a preponderance of the evidence." *Id.* at *2. The respondents' arguments to the contrary, *see* ECF No. 9 at 6–12, are not new, and have been previously considered and rejected. Accordingly, "[t]he Court incorporates its analysis in *Kuzmic* here and concludes that because the burden of proof was placed on the petitioner, the bond hearing did not provide him the required due process." *Torres Gonzalez v. Baltazar*, No. 26-cv-02981-CYC, 2026 WL 2474336, at *1 (D. Colo. Aug. 24, 2026). The petitioner's habeas petition will therefore be granted.

**5. Relief**

Turning to the appropriate relief, "[c]ourts may grant habeas relief in the first instance based on an IJ's constitutionally infirm bond hearing, whether the relief comes in the form of a second bond hearing or immediate release." *Guzman Torres v. Baltazar*, No. 26-cv-03265-CNS, 2026 WL 2267182, at *2 n.3 (D. Colo. Aug. 6, 2026). "Upon review of the record and considering all the circumstances of this case," *Mejia v. Baltazar*, No. 26-cv-00385-NYW-TPO, 2026 WL 1361514, at *5 (D. Colo. May 15, 2026), the respondents will be ordered to provide the petitioner another, constitutionally-compliant bond hearing before a different IJ **no later than October 21, 2026**.

This relief is appropriate for two reasons. First, this is not a case where the IJ defied an order from a district court placing the burden of proof on the government. As discussed, there is presently no binding authority on the allocation of the burden of proof at bond hearings, and the BIA requires the burden be placed on the noncitizen. *See Matter of Adeniji*, 22 I. & N. 1102, 1116 (BIA 1999). Second, "an [IJ] is better suited to consider whether Petitioner poses a flight risk and a danger to the community in this instance, where there is an

insufficient record before this Court." *Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *8 (D. Colo. Oct. 22, 2025).

That said, the IJ at the next bond hearing must apply the requisite burdens to the hearing evidence *de novo*. "Rubber stamping a prior determination with the words 'clear and convincing'" will not suffice. *Bayani v. LaRose*, No. 26-cv-0266-JES-VET, 2026 WL 1270059, at *8 (S.D. Cal. May 8, 2026) (quoting *Enoh v. Sessions*, No. 16-CV-85 (LJV), 2017 WL 2080278, at *10 (W.D.N.Y. May 15, 2017)). Clear and convincing evidence "requires a high degree of probability." *Glasscock v. Utah*, No. 4:18-CV-4-DN, 2021 WL 1169682, at *6 (D. Utah Mar. 26, 2021) (quotation marks and citation omitted). It is unlikely that, without more, unproven allegations in a criminal affidavit from 15 years ago, which were known when the petitioner was released by an IJ on bond, could demonstrate present dangerousness by that standard. *See, e.g.*, *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 712 (6th Cir. 2004) (holding that "IJ's consideration of unproven allegations of sexual misconduct," where noncitizen pleaded guilty to lesser offenses, "contravened" BIA precedent); *Blandon v. Barr*, 434 F. Supp. 3d 30, 39–40 (W.D.N.Y. 2020) (finding that IJ's exclusive reliance on prior violent convictions without "looking at the recency of the convictions or Petitioner's subsequent behavior" did not satisfy clear-and-convincing standard); *Y.S.G. v. Andrews*, No. 2:25-cv-1884-SCR, 2025 WL 2979309, at *9 (E.D. Cal. Oct. 22, 2025) (concluding that "the IJ failed to make a meaningful determination of present dangerousness" because, in part, she "focused on petitioner's older criminal convictions, which another IJ had already found did not demonstrate danger by clear and convincing evidence").

By the same token, the fact that the petitioner now has a non-final order of removal may not be treated as conclusive proof of flight risk. *See Singh v. Baltazar*, No. 26-cv-01947-

NRN, 2026 WL 2077483, at *2 (D. Colo. July 17, 2026). "The existence of a removal order does not obviate the IJ's obligation to make an individualized determination." *Silvestre v. Santiago*, No. 26-cv-01195-NYW, 2026 WL 2948723, at *2 (D. Colo. Oct. 1, 2026) (quoting *Farias-Ortega v. Soto*, No. 25-cv-17848-RK, 2026 WL 2671677, at *4 (D.N.J. Sept. 10, 2026)); *Timbigamba v. FCI Berlin, Warden*, 836 F. Supp. 3d 430, 446 (D.N.H. 2026) (finding that "[p]ermitting denial of bond based on the mere fact of a non-final removal order would be in conflict with Congress' decision to mandate detention for noncitizens with orders of removal only once those orders become final"). Due process precludes exclusive reliance "on a 'mechanistic factor' common to virtually all immigration detainees that are subject to prolonged detention, *i.e.*, the existence of removal order entered by an IJ." *Wilkins v. Doll*, No. 1:17-cv-2354, 2018 WL 3388032, at *3 (M.D. Pa. July 12, 2018).

In sum, the respondents shall provide the petitioner with another bond hearing. At that hearing, to maintain detention, the respondents must prove that the petitioner is a danger by clear and convincing evidence or a flight risk by a preponderance of the evidence. The IJ "may not give undue weight" to unproven allegations underlying his 14-year-old conviction for obstruction of justice absent additional evidence of criminal conduct, *L.G. v. Choate*, 744 F. Supp. 3d at 1187, nor deny release solely based on the existence of a final order of removal. The record must reflect individualized consideration of evidence of the petitioner's equities and community ties. *See Perez Serrano v. Hagan*, No. 1:26-cv-01641-CNS, 2026 WL 1396534, at *2–3 (D. Colo. May 16, 2026). Furthermore, the IJ "is required to meaningfully consider alternatives to imprisonment such as community-based alternatives to detention including conditional release, parole, as well as Petitioner's ability to pay a bond," and such consideration should be reflected in the oral and/or written bond order. *L.G. v.*

*Choate*, 744 F. Supp. 3d at 1187; *see also Black v. Decker*, 103 F.4th 133, 158 (2d Cir. 2024); *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017).

**ORDER**

1. The Petitioner's Verified Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED** in part. His Motion for Order, ECF No. 14, requesting expedited consideration under 28 U.S.C. § 1657(a), is **DENIED** as moot.

2. On or before **October 21, 2026**, the respondents **shall** provide the petitioner with a second bond hearing before a different Immigration Judge or else **release** the petitioner on reasonable conditions not to include electronic monitoring.

3. At the bond hearing, the respondents **shall** bear the burden of proof to maintain detention. To maintain the petitioner's detention, the respondents must prove dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. The Immigration Judge **shall** apply these standards consistent with the due process considerations discussed in the "Relief" section above.

4. The Immigration Judge **shall** meaningfully consider (1) the petitioner's evidence of equities and community ties, and (2) alternatives to detention and, if bond is set, the petitioner's ability to pay a bond. Any bond order **shall** reflect such meaningful consideration.

5. On or before **October 23, 2026**, the respondents **shall** file a status report updating the Court as to the outcome of the bond hearing.

Entered and dated this 14th day of October, 2026, at Denver, Colorado.

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge